IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| **JEROME KORTE and LANA KORTE,** individuals who are citizens and residents of the State of Illinois, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 03-239-GPM |
| **EXXON MOBIL COAL USA, INC.,** a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S REQUEST FOR ADMISSION OF FACTS**

NOW COMES Plaintiffs, Jerome and Lana Korte, by and through their attorney, the Livingston Law Firm, and pursuant to The Federal Rule of Civil Procedure 36, request the following facts be admitted as true by the Defendant, ExxonMobil Coal USA, Inc.:

1. Monterey Coal Company is a wholly owned subsidiary of ExxonMobil Coal, USA.

2. ExxonMobil Coal USA is a wholly owned subsidiary of ExxonMobil Corporation.

3. Upon cessation of operations of the Monterey Coal Co. Mine #2, defendant ExxonMobil Coal, USA was required by law to cover the gob and slurry piles.

4. ExxonMobil through Monterey Coal Company, was required upon closure of Mine #2 to cover the exposed Refuse Disposal Area 1 and exposed Refuse Disposal Area 2 within a reasonable period of time.

5. Coal and coal refuse from Monterey Mine #2 contains the following constituents: iron, manganese, sulfates, chlorides and total dissolved solids (TDS).

6. When wind travels over the exposed Refuse Disposal Area 1 and exposed Refuse Disposal Area 2, particles of fine and coarse refuse in the form of dust are lifted and blown off of the exposed Refuse Disposal Area 1 and exposed Refuse Disposal Area 2.

7. When wind travels over the exposed Refuse Disposal Area 1 and exposed Refuse Disposal Area 2, effected dust fines from RDA 1 and RDA 2 does not always stay on Monterey Coal Company property.

8. Monterey Coal Company has reached settlements for air (dust) damage with neighbors of close proximity to Monterey Coal Company Mine #2, including: Cyril F. Korte, Wilbert F. Timmerman, Richard Timmerman and Harold Albers.

9. Saint Louis Industrial Lab Testing analyzed metal and asphalt roof structures located on the Korte and Albers farms and determined coal refuse materials, including sulfur, blown from RDA 1 and/or RDA 2 accelerated the corrosion condition of said roofs.

10. Fugitive dust from the Refuse Disposal Area 1 and/or RDA 2 blew and continues to blow onto the Jerome and Lana Korte farm.

11. The Refuse Disposal Areas which occupy approximately 300 acres of land, are leaching contaminants into the groundwater.

12. The cost to install water mains, service lines and all plumbing required to connect residents of Clinton county on or near the Pearl Aquifer to a public water supply in 2002 was approximately $1.4 million.

13. Monterey Coal Company made a payment of one million dollars ($1,000,000.00) to Clinton County to subsidize the installation of water mains, service lines and all plumbing required to connect residents of Clinton county in and near the Pearl Aquifer area to a public water supply.

14. Pyrite (iron sulfate) is commonly contained in drainage from Refuse Disposal Areas.

15. A slurry commonly requires a six to eight foot cover to support heavy equipment involved with the covering process in reclamation procedures.

16. Exxon Mobil and Monterey Coal Company were fully aware RDA 2 would impact groundwater based on observations of RDA 1, prior to the construction of RDA 2.

17. It is possible that excessive extraction well pumping from the mine, and/or subsidence of overlying materials, could alter ground-water flow paths sufficiently to impact ground-water directional flow.

18. Precipitation, Grassy Branch stream flow, Freshwater Lake levels and static water levels in virtually all monitoring wells in the Pearl Sand Aquifer show strong correlations with one another and support a conclusion that the Pearl and Freshwater Lake are directly interconnected.

19. Exxon Mobil and/or Monterey Coal Company significantly changed the geochemistry of the Pearl Sand Aquifer at Mine #2 through significant pumping which began in 1985.

20. Testing results completed by Exxon Mobil and/or Monterey Coal Company prior to 1991, pertaining to the source and/or sources of iron and manganese from Monterey Coal Company Mine #2 property were under representative of metals due to improper field testing techniques.

21. The fifteen (15) operating extraction wells at Monterey Coal Company Mine #2 withdraw approximately 4.1 million gallons of water per week from the Pearl Sand Aquifer.

22. Surface water at Monterey Coal Company Mine #2 is not likely to ever meet drinking water standards in Illinois.

23. Monterey Coal Company is unaware of the quantity of time, in years, that extraction well pumping from the Pearl Sand Aquifer will be required to eliminate all constituents of concern leaching from RDA1 and RDA2 from exceeding the Illinois standards set for Class I drinking water.

24. Monterey Coal Company has rarely tested for other constituents commonly leached into groundwater from exposed coal refuse disposal areas, other than iron, manganese, chlorides, sulfates, and total dissolved solids (TDS) at Mine #2.

25. Monterey Coal Company has spent in excess of $500,000.00 on groundwater impact issues at its #2 mine in an effort to address environmental concerns.

26. Exxon Mobil's principle objective is guided by their long standing ethics policy to conduct their business in accordance with the very highest standards.

27. The aforementioned "very highest standards" includes compliance with all applicable laws.

28. Monterey Coal Company Mine #2 contaminated the Pearl Sand Aquifer to a level of exceeding Illinois Class I groundwater standards for Total Dissolved Solids, sulfates, chlorides, manganese and iron.

29. The exceedance of Class I groundwater standards for total dissolved solids, sulfates, chlorides, manganese and iron at Mine #2 violated the Illinois Environmental Act and its applicable regulations prior to obtaining a Groundwater Management Zone.

30. Violations of Illinois Environmental Protection Act are inconsistent with Exxon Mobil's "very highest standards" objective.

31. Refuse Disposal Area #2 was constructed 18 inches closer to the Pearl Sand Aquifer than Refuse Disposal Area #1.

32. Refuse Disposal Area #2 was constructed after Monterey Coal Co. had knowledge that Refuse Disposal Area #1 had contaminated the Pearl Sand Aquifer to such a degree that the Illinois Class I drinking water standards were violated for Total Dissolved Solids, sulfates, chlorides, manganese and iron.

33. The Pearl Sand Aquifer was a known potable public water source prior to Monterey Coal Company Mine #2 impacting the groundwater.

34. The Pearl Sand Aquifer no longer remains a potable public water source in areas surrounding Monterey Coal Company Mine #2.

35. Monterey Coal Company obtained a "Covenant Not to Sue" from the Illinois Attorney General's Office and the Illinois EPA with respect to issues of groundwater contamination. (P. EX. 293)

36. Monterey Coal Company has at no former time been assessed a civil penalty or fine for

contaminating any area of the Pearl Sand Aquifer.

37. Monterey Coal Company has at no former time been assessed a civil penalty or fine for fugitive dust leaving company property at Mine #2.

38. The groundwater at Monterey Coal Company Mine #1 is contaminated.

39. Monterey Coal Company has neither implemented the approved Corrective Action Plan (CAP) nor begun reclamation requirements of activities beyond planning.

40. No final cover material has been placed on RDA 1 or RDA 2.

41. Monterey Coal Company and/or Exxon Mobil Coal USA were aware of groundwater contamination in the Pearl Sand Aquifer descending from RDA1 since at least 1981.

42. Aware of groundwater impairment, Monterey Coal Company placed three (3) extraction wells near Refuse Disposal Area #1 in 1981.

43. Exceeding Class I groundwater standards at monitoring wells is reportable to the Illinois EPA.

44. The first exceedance of Illinois groundwater standards reported to the Illinois EPA from Monterey Coal Company Mine #2 occurred in 1986.

45. Monterey Coal Company's proposed solution to groundwater contamination is to have a Groundwater Management Zone per approval by the Illinois Environmental Protection Agency.

46. The Corrective Action Plan approved by the Illinois EPA for Monterey Coal Company Mine #2 includes a dirt cover for RDA 1 and RDA 2 that allows penetration and/or infiltration of 85% of rainfall into the Refuse Area Disposals.

47. A primary purpose of the cover in a mine reclamation plan is to reduce infiltration of rainwater into refuse disposal areas.

48. Rainwater infiltration into RDA 1 and RDA2 is proposed and approved to be reduced by 15% at Monterey Coal Company Mine #2.

49. The leading purpose of a reclamation effort at a terminated coal mine is to ensure that the site is brought back as close as possible to the pre-mining conditions.

50. Pre-mining conditions at Monterey Coal Company Mine #2 do not include the exceedance of Class I drinking water standards for Total Dissolved Solids, sulfates and chlorides.

51. Pre-mining conditions at Monterey Coal Company Mine #2 do not include the exceedance of Class I drinking water standards for manganese and iron.

52. The Illinois Environmental Protection Agency (IEPA) approved the Groundwater Management Zone (GMZ) plan for Monterey Coal Company Mine #2 was approved in May 2002.

53. The groundwater at Monterey Coal Company Mine #2 was known to exceed Class I drinking water standards in 1981.

54. Any ground under the Refuse Disposal Areas and the Pearl Sand Aquifer is saturated with water.

55. The water saturating the ground under the Refuse Disposal Areas contains leached contaminants of concern, including Total Dissolved Solids, sulfates, chlorides, manganese and iron.

56. The Monterey Coal Company Mine #2 sources of contamination into the Pearl Sand Aquifer include: Refuse Disposal Area 1, Refuse Disposal Area 2, the freshwater lake and the recirculation.

57. The Monterey Coal Company Mine #2 sources of contamination into the Pearl Sand Aquifer include the RDA holding ponds.

58. Monterey Coal Company and Patrick Engineering documents indicate that groundwater flow direction has included a northward directional flow.

59. Jerry and Lana Korte reside north of the Refuse Disposal Areas.

60. Prevailing wind direction in the area of Monterey Coal Company Mine #2 is from the south to the north.

61. The Corrective Action Plan and Ground Management Zone approved by the Illinois EPA does not environmentally protect the Pearl Sand Aquifer as effectively as the previously proposed HDPE (geomembrane) liner would in combination with the continued extraction of groundwater.

62. EPA does not require sampling for cadmium, although cadmium has been detected at Mine #2 at levels exceeding Class I drinking water standards.

63. The required Office of Minerals and Mining bonds at Monterey Coal Company Mine #2 do not exceed the cost of implementing reclamation and the Corrective Action Plan.

64. The currently functioning extraction wells at Mine #2 do not capture all contaminated groundwater water seeping from RDA 1, RDA 2.

65. The currently functioning extraction wells at Mine #2 do not capture all contaminated groundwater water seeping from the freshwater lake, the recirculation lake and all holding ponds.

66. The Illinois EPA alleges that the Pearl Aquifer groundwater underlying portions of the Monterey Coal Company Mine #2 site exceed Class I Groundwater Standards for Total Iron, Total Manganese, Sulfate, Chloride, and Total Dissolved Solids.

67. The Illinois EPA initiated allegations of non-compliance through the issuance of Violation Notice Letter W-1999-00303 ("Violation Notice") on December 21, 1999, which alleged that Monterey Coal Company violated the Groundwater Quality Standards pursuant to Section 12 of the Act, 415 ILCS 5/12 (2000), and Section 620.410 of the Illinois Pollution Control Board ("Board") Regulations, 35 Ill. Adm. Code 620.410.

68. The Illinois EPA originally planned to approve the Corrective Action Plan ("CAP") and Groundwater Management Zone ("GMZ") on the execution date of the Covenant Not to Sue.

69. Illinois EPA has stated their belief that the implementation of the CAP and GMZ would address the violations alleged in the Violation Notice dated December 21, 1999.

70. Monterey Coal Company contends that it entered into the Covenant Not to Sue with the Illinois EPA for the purpose of settling and compromising disputed claims without having to incur the expense of contested litigation.

71. By entering into the Covenant Not to Sue and complying with its terms, Monterey Coal Company did not affirmatively admit the allegations of violations in the Covenant Not to Sue.

72. Monterey Coal Company made a $1,000,000.00 payment to Clinton County for the installation of water mains, service lines, and all plumbing required to connect residents of Clinton County in

and near the Pearl Aquifer area to a public water supply.

73. Under the Covenant Not to Sue, Groundwater Remediation, Monterey Coal Company agreed to install a slurry wall along the southern edge of Refuse Disposal Area #1 and operate groundwater extraction wells to prevent offsite migration of the constituents.

74. Monterey Coal Company has yet to comply with the installation of the slurry wall as approved by the Illinois EPA.

75. Monterey Coal Company submitted a CAP to the Illinois EPA on May 8, 2002. The CAP included a revised Groundwater Management Zone application. The Groundwater Management Zone application included a complete list of the constituents for which relief is sought and a description of the three-dimensional area of the GMZ.

76. The approved CAP contains all required documents depicting the remediation for the recirculation and freshwater lakes, including the operation of groundwater extraction wells in the vicinity of those lakes.

77. The CAP contains all required documents depicting groundwater remediation.

78. Those documents in the CAP discuss and illustrate the hydraulic control systems, consisting of a slurry wall along the south side of Refuse Disposal Area #1, and the operation of groundwater extraction wells along the west side of the Refuse Area Disposals.

79. The approved CAP contains modeling results anticipating the performance of the groundwater remediation system. Those results do not include a termination date for extraction well pumping.

80. Under the approved remediation plan, contaminated or impacted water is extracted from the Pearl Sand Aquifer, sent through a series of ditches and creeks and discarded into the Kaskaskia River for dilution and disposal.

81. The approved CAP contains an operations and maintenance schedule for all equipment, structures, and facilities that may be subject to wear or degradation over time, including, but not limited to: groundwater extraction and monitoring wells, including well screens, casings, pumps,

and motors; ditches for the conduction of storm water and extracted groundwater, pipelines and associated pumps; and Refuse Disposal Area covers.

82. The approved CAP contains detailed provisions for the annual report Monterey Coal will provide to the Illinois EPA.

83. Approval of the CAP and the Groundwater Management Zone application, by the Illinois EPA, was effective upon the execution of the Covenant Not to Sue without public comment or participation, athough implementation included discharge to the Kaskaskia River which required an NPDES permit.

84. An NPDES permit public hearing was held and a permit was issued by the Illinois EPA.

85. From June 1988 through April 1990 Monterey Coal Company diverted coal preparation plant recirculation water to the Freshwater lake at Mine # 2.

86. Monitor well 311 exceeded groundwater quality standards for Class I Drinking Water because of seepage of the Freshwater Lake in August 2001.

87. From June 1988 through April 1990 the Freshwater lake was losing 112,700 gallons per day into the Pearl Aquifer.

88. The estimated cost of Monterey Coal Co. No. 2 Mine Reclamation of Refuse Disposal Areas Reclamation using private contractor costs was $27,142,000.00 for a one foot Compacted Clay, HDPE, geonet (10% coverage) 3 foot soil cover.

89. The estimated cost of Monterey Coal Co. No. 2 Mine Reclamation of Disposal Areas Reclamation using private contractor costs was $16,919,000.00 for a two foot soil cover.

90. Monterey Coal Co. proposed and Illinois EPA approved a 2 foot soil cover.

91. By proposing a 2 foot soil cover instead of a one foot compacted clay, HDPE, geonet (10% coverage) three foot solid cover, Monterey saved over $10 Million in reclamation costs. 132

92. All sample results produced by either party are presumed accurate regarding sampling taken and recorded in written results.

93. No chain of custody issues exist as to any sampling results provided by either party

       Respectfully submitted,

       Jerry and Lana Korte

    BY:  LIVINGSTON LAW FIRM

       <u>S/ Penni S. Livingston</u>

       PENNI S. LIVINGSTON, #06196480
       CHRISTINA E. MANUEL, #06280544
       Attorneys for the Plaintiff
       4972 Benchmark Centre, Suite 100
       Swansea, IL 62226
       618/628-7700

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JEROME KORTE and LANA KORTE,** | ) | |
| individuals who are citizens and residents | ) | |
| of the State of Illinois, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 03-239-GPM** |
| | ) | |
| **EXXONMOBIL COAL USA, INC.,** | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd of June, 2004, the foregoing Plaintiffs' Request to Admit was filed electronically with the Clerk of the Court on counsel of record registered in the Court's system as reflected by email addresses shown or by first class mail, postage prepaid, to those counsel of record not registered in the Court's system.

                                         __s/Penni S. Livingston_____

Kurt E. Reitz
Thompson Coburn, LLP
525 West Main St.
P.O. Box 750
Belleville, IL 62221
kreitz@thompsoncoburn.com

Ray Massey
Joe Kellmeyer
Paul T. Sonderegger
Thompson Coburn, LLP
One US Bank Plaza
St. Louis, MO 63101