# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**

DATE: January 30, 2006

TO: Norbert G. Jaworski
United States District Court
Southern District of Illinois
Room 142
750 Missouri Avenue
P.O. Box 186
East St. Louis, IL  62202

FROM: Gino J. Agnello, Clerk

RE: 05-1168
Korte, Jerome v. ExxonMobil Coal USA
03 C 239, G. Patrick Murphy, Chief Judge

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any.  A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

```
        [ ] No record filed
        [X] Original record on appeal consisting of:
ENCLOSED:                                    TO BE RETURNED AT LATER DATE:
        [ ]     Volumes of pleadings                  [2]
        [ ]     Volumes of loose pleadings            [2]
        [ ]     Volumes of transcripts                [1]
        [ ]     Volumes of exhibits                   [2]
        [ ]     Volumes of depositions                [ ]
        [ ]     In Camera material                    [ ]
        [ ]     Other_____ [ ]

                Record being retained for use         [ ]
                in Appeal No. _____

        Copies of this notice sent to:       Counsel of Record
        [ ]     United States Marshal
        [ ]     United States Probation Office
```

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice.  Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date: 2/1/06

(1071-120397)

Jackie Payton
Deputy Clerk, U.S. District Court

*RECEIVED FEB 0 1 2006 CLERK, U.S. DISTRICT COURT, SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS OFFICE*

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

## BILL OF COSTS

**Date: January 30, 2006**

Taxed in favor of: Appellee - ExxonMobil Coal USA

Appeal No. 05-1168

JEROME KORTE and LANA KORTE,
       Plaintiffs - Appellants
  v.

EXXONMOBIL COAL USA, INCORPORATED,
       Defendant - Appellee

Appellate Court No.:  05-1168                  Docketed on: 1/24/05
Short Caption:        Korte, Jerome v. ExxonMobil Coal USA
District Court Judge: G. Patrick Murphy
District Court No.:   03 C 239

|   |   | Cost Of Each Item |   |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding | _____ | _____ |
| 2. | For reproduction of any record or paper, per page | _____ | _____ |
| 3. | Reproduction of briefs: | $ 751.80 | |
|   | Total: | | $ 751.80 |

(1077-081992)

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604



**JUDGMENT - WITH ORAL ARGUMENT**

**Date: January 6, 2006**

**BEFORE:**     Honorable FRANK H. EASTERBROOK, Circuit Judge

Honorable ILANA DIAMOND ROVNER, Circuit Judge

Honorable DIANE S. SYKES, Circuit Judge

No. 05-1168

JEROME KORTE and LANA KORTE,
        Plaintiffs - Appellants

  v.

EXXONMOBIL COAL USA, INCORPORATED,
        Defendant - Appellee

Appeal from the United States District Court for the Southern District of Illinois
No. 03 C 239, G. Patrick Murphy, Chief Judge

The judgment of the District Court is AFFIRMED, with costs, in accordance with the decision of this court entered on this date.

(1061-110393)

**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals
For the Seventh Circuit
Chicago, Illinois 60604

Argued September 14, 2005
Decided January 6, 2006

*Before*

Honorable FRANK H. EASTERBROOK, *Circuit Judge*

Honorable ILANA DIAMOND ROVNER, *Circuit Judge*

Honorable DIANE S. SYKES, *Circuit Judge*

CERTIFIED COPY
A True Copy:
Teste:
Clerk of the United States
Court of Appeals for the
Seventh Circuit.

No. 05-1168

| | |
|---|---|
| JEROME and LANA KORTE, | ) |
| | ) Appeal from the United States |
| *Plaintiffs-Appellants*, | ) District Court for the Southern |
| | ) District of Illinois |
| v. | ) |
| | ) No. 03 C 239 |
| EXXONMOBIL COAL USA, INC., | ) |
| | ) G. Patrick Murphy, *Chief Judge* |
| *Defendant-Appellee*. | ) |

## O R D E R

  Jerome and Lana Korte brought suit against ExxonMobil Coal USA, Inc. (Exxon) for alleged personal injury and punitive damages caused by airborne dust blown off two coal refuse disposal areas (RDAs) owned by Exxon. After discovery, Exxon filed a motion to exclude the testimony of the Kortes' medical expert and requested summary judgment asserting that without such testimony the Kortes cannot prove causation. The District court granted the motion to exclude the expert testimony and entered summary judgment in favor of Exxon. The Kortes appeal the exclusion of the expert testimony and the district court's grant of summary judgment. We affirm.

## I.

The Kortes own and operate a produce farm on forty acres of property near Germantown, Illinois. The Kortes lived on this property from February 1993 until January 2002, and since moving have continued to work, grow crops, and keep animals on the farm. Less than one mile north of the Korte's farm, Exxon owns a former coal mine that has two RDAs which encompass 300-400 acres. During the time that the mine was in operation, between 1977 and 1996, the RDAs collected runoff from coal processing into a sediment pool or "gob pile." Thus, the RDAs contain rock and other materials that have been washed and separated from the coal during processing. After the mine closed, the wet material in the gob pile began to dry, and some of the coal refuse particles became capable of being moved by the wind. There are several documented instances of dust blowing off the RDAs. In response to complaints by neighbors, Exxon took some measures to control dust, such as the installation of snow fences and the use of dust suppressants. In January 2003, Exxon received a noncompliance advisory from the Illinois Environmental Protection Agency (IEPA) because of dust blowing off the RDAs beyond Exxon's property.

Mr. Korte claims that sometime in 1996 he began to experience chronic sore throat, eye irritation and tearing, indigestion, diarrhea and fatigue. Mrs. Korte alleges that she experienced similar symptoms dating back to at least 1997. At some point, the Kortes suspected that their symptoms were caused by exposure to dust blown off the RDAs. On March 7, 2002, the Kortes' general physician, Dr. Wells, diagnosed Mr. Korte with a mild obstructive lung problem including a small bronchospasm component.

In March 2003, Dr. Peter Orris, a specialist in occupational medicine, examined and interviewed Mr. and Mrs. Korte at the request of their attorney in order to determine the cause of their symptoms. Dr. Orris opined that "[i]t is likely that" a number of the Kortes' symptoms including "lacrimation [tearing of the eyes], chronic eye burning, rhinitis [runny nose and sneezing], and sore throat may be caused by" their exposure to coal dust. R. 72 Ex. 14 at 4.

In formulating his opinion, Dr. Orris relied on the Kortes' personal account of dust exposure, their medical history, their pictures and video of dust being blown off the RDAs, and his own knowledge of the effects of exposure to coal dust. Dr. Orris reviewed the medical records of Mr. and Mrs. Korte, but he did not conduct any additional medical tests, such as blood tests, toxicological tests or allergy tests. Dr. Orris did not conduct any tests on the dust from the Kortes' property, and he admitted that he cannot be certain that the dust the Kortes' described and videotaped contained any coal dust. Furthermore, Dr. Orris did not rely on tests conducted on November 6, 2002, by the IEPA and Illinois Department of Public Health (IDPH) on dust found inside and outside of the Kortes' home. These tests did not detect any inorganic compounds above health guidelines and concluded that "[e]xposure to the dust would not be expected to cause any adverse health effects." R. 61 Ex. D at 2. Moreover, although Dr. Orris opined that the Kortes may be at an increased risk of cancer due to possible exposure to

No. 05-1168                                                                                      3

polycyclic aromatic hydrocarbons (PAHs) contained in coal dust, he did not rely on tests measuring the type and quantity of PAHs found in Exxon's RDAs. Finally, in forming his opinion, Dr. Orris did not rule out or fully consider the likelihood of other causes for the Kortes' symptoms, such as cigarette smoking (Mr. Korte has smoked one pack of cigarettes per day for approximately 35 years), pesticides, allergies, or exposure to dust containing dirt, gravel, and other background levels of inorganic chemicals.

In March 2003, the Kortes filed suit in Illinois state court against Exxon alleging, among other things, personal injury caused by dust blown off Exxon's RDAs. Exxon removed the case to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1441, and following discovery filed a motion for summary judgment. Exxon's motion sought to exclude the testimony of Dr. Orris on the grounds that it does not meet the criteria for admissible expert opinion testimony set forth in Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In a memorandum and order dated November 8, 2004, the district court held that Dr. Orris' opinion does not meet the criteria set forth by Rule 702 and *Daubert* because it is not derived from appropriate scientific methodology and therefore would not assist the jury in determining the facts in issue. The district court found that Dr. Orris' opinion is not derived from the scientific method because he began with the conclusion, provided by the Kortes, that exposure to coal dust had caused their symptoms, and then formed his opinion without performing or relying on existing scientific tests, such as those conducted by the IEPA and IDPH to confirm that the Kortes had in fact been exposed to coal dust. In addition, the district court found that Dr. Orris failed to properly exclude possible alternative causes for the Kortes' symptoms, such as seasonal allergies, pesticides or cigarette smoking, in order to explain why his opinion is scientifically valid in light of proposed alternatives. Since this case involves an alleged health-related injury caused by a toxic tort, the district court concluded that the Kortes cannot establish causation without expert testimony. Because it agreed that Dr. Orris' opinion was inadmissable, the district court granted summary judgment on all claims for personal injury.

## II.

We review the district court's grant of summary judgment for Exxon *de novo*. E.g., *Fix v. Quantum Indus. Partners LDC*, 374 F.3d 549, 552 (7th Cir. 2004). Summary judgment is proper when there is no genuine issue as to any material fact because the non-moving party has failed to establish the existence of an essential element of its case as to which that party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Kortes bore the burden of establishing the essential elements of their claim, including causation. Expert testimony is needed to establish causation in cases alleging an adverse health effect when the "medical effects [of exposure to the toxin] are not within the ken of the ordinary person." *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms).

Rule 702 of the Federal Rules of Evidence, as interpreted by *Daubert*, governs the admissibility of expert testimony in federal courts. *E.g., Ancho v. Pentek Corp.*, 157 F.3d 512, 515 (7th Cir. 1998); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997). If scientific knowledge will assist the jury to understand the evidence or determine a fact in issue, Rule 702 permits an expert to testify provided that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. *Daubert* held that the district court must function as a "gatekeeper" to ensure that the offered expert testimony is both relevant and reliable. 509 U.S. at 589. We have interpreted *Daubert* to require district courts to employ a two-step methodology when determining the admissibility of proffered expert testimony. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995); *Wintz*, 110 F.3d at 512. First, the district court must determine whether the testimony has been subjected to the scientific method; in other words, it must exclude testimony based on "subjective belief or unsupported speculation." *Deimer*, 58 F.3d at 344 (quoting *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)). Second, the district court must determine whether the testimony has a sufficient nexus with the facts of the case and with the relevant inquiry that it will actually assist the trier of fact in understanding the evidence and performing its function as fact-finder. *Id.*; *see Daubert*, 509 U.S. at 591-92. We review the district court's decision to admit or exclude expert testimony for an abuse of discretion. *Eg., U.S. v. Allen*, 269 F.3d 842, 845 (7th Cir. 2001).

In *Wintz*, we upheld a district court's decision to exclude a toxicologist's expert testimony on causation because the expert's testimony "was not sufficiently based on scientific methodology to be admissible." 110 F.3d at 514. In formulating his opinion, the toxicologist "knew only that [the plaintiff's mother, while pregnant with plaintiff,] had worked with a chemical containing [a toxin], and that [the plaintiff] had suffered symptoms he found to be consistent with" exposure to the toxin. *Id.* at 513. The expert did not know how frequently and to what degree the plaintiff's mother had been exposed to the toxin, nor had he attempted to correlate the extent of exposure with the plaintiff's symptoms. *Id.* The district court found that the expert's opinion was primarily based on "a general understanding of [the toxin], with only unsupported speculation having been used to relate the general knowledge to the facts surrounding [the plaintiff's mother's] exposure." *Id.* at 514. Therefore, the district court concluded, and we agreed, that the expert's "opinions as to causation were speculative in nature and lacking scientific reliability." *Id.* at 512-13 (internal quotation marks omitted); *see id.* at 514.

Likewise, in this case, Dr. Orris opined on the cause of the Kortes' symptoms based on the subjective beliefs of the Korte family that they had been exposed to coal dust and his general knowledge of the effects of coal dust exposure. Dr. Orris premised his opinion on the assumption that coal dust from Exxon's RDAs had blown onto the Kortes' property and formed his opinion without sufficient scientific evidence confirming the validity of this premise. Consequently, Dr. Orris' opinion was not based upon "sufficient facts or data," Fed. R. Evid. 702, and therefore was properly excluded by Rule 702 and *Daubert*. Dr. Orris did not rely on

No. 05-1168                                                                                                               5

tests conducted on the dust found in or around the Kortes' property. Dr. Orris did not know the chemical composition of the dust on the Kortes' property, and could not verify that the dust emanated from Exxon's RDAs. Dr. Orris also did not conduct or rely on tests measuring the amount of exposure in order to opine "'whether the dose to which the plaintiff was exposed is sufficient to cause the disease.'" *Wintz*, 110 F.3d at 513 (quoting *Reference Manual on Scientific Evidence* (Fed. Judicial Ctr. 1994)). Furthermore, Dr. Orris did not rule out possible alternative causes for the Kortes' symptoms, such as cigarette smoke, seasonal allergies, or exposure to pesticides. Therefore, just as in *Wintz*, we hold that "[a]t a minimum, it was not manifestly erroneous for the district court to conclude that . . . [Dr. Orris'] proffered testimony as to proximate causation in this case was not sufficiently based on scientific methodology to be admissible." *Id.* at 514.

We next consider whether, without Dr. Orris' expert testimony, there exists enough evidence to raise any genuine issue of material fact as to the causation of the Kortes' symptoms. The Kortes allege that exposure to coal dust is the cause of their symptoms. The district court correctly held that whether exposure to coal dust could cause personal injuries is not within the ken of the ordinary person, and thus "expert testimony is needed for the Kortes to prove their case." R. 83 at 3; *see Goffman*, 59 F.3d at 672; *Wintz*, 110 F.3d at 516 (holding that without the expert's testimony the plaintiffs could not establish cause). The additional evidence provided by the Kortes, such as photographs, video, and deposition testimony, fails to adequately prove that coal dust from the RDAs caused the Kortes' symptoms or even reached their property. The Kortes' attorney admitted on the record that without Dr. Orris' testimony their case for personal injury fails. R. 81 at 24.

### III.

We conclude that the district court was not manifestly erroneous in excluding Dr. Orris' expert testimony, and without expert testimony the Kortes fell short of raising a genuine issue of material fact as to the cause of their symptoms. Therefore, we AFFIRM the grant of summary judgment in favor of Exxon.